*12/24 2003*

*C.W. Cody*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEXIS CORRIGAN, | : | CIVIL ACTION NO: |
| *Plaintiff,* | : | 3:03 CV 230 (SRU) |
| | : | |
| v. | : | |
| | : | |
| POLO RALPH LAUREN, | : | NOVEMBER 12, 2003 |
| *Defendants.* | : | |
| | : | |

## AMENDED COMPLAINT

### JURISDICTION AND VENUE

COUNT ONE

     1.     This action is brought by Plaintiff Alexis Corrigan ("Plaintiff") against the Defendant Polo Ralph Lauren ("Defendant") for damages arising out of discrimination and wrongful termination.

     2.     This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. Section 1331 and 29 U.S.C. Section 2601a, *et seq.*, as it alleges a violation of the Family Medical Leave Act ("FMLA").

3.      This also has subject matter jurisdiction over this claim pursuant to 28 U.S.C. Section 1331 as it alleges violations pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.*, including the amendments contained with the Civil Rights Act of 1991.

4.      This action is also filed by Plaintiff pursuant to Section 46a-60, *et seq.*, of the Connecticut General Statutes.

5.      Venue is appropriate in this District pursuant to 28 U.S.C. Section 1391(b).

<u>THE PARTIES</u>

6.      The Plaintiff is a citizen of the United States and a resident of the State of Connecticut, residing at 101 Taine Mountain Road, Burlington, Connecticut 06013. The Plaintiff brings this action for discrimination in the terms and conditions of her employment by the Defendant because of a violation of her rights in failing to restore her to her position and/or and equivalent position after taking Family and Medical Leave and in retaliating against her for taking such leave.

7.      The Defendant is a Delaware corporation with a principal place of business at 650 Madison Avenue, New York, NY 10022 and is licensed to do business and does business in the State of Connecticut.

2

8.      The Defendant employs at least fifty employees as that term is defined by the relevant federal and state statutes concerning violations of the FMLA, 29 U.S.C. Section 2611(4).

9.      The Plaintiff worked more than 1250 hours in a twelve month period and therefore is covered under the Act and was designated by the Defendant as being covered under the Federal FMLA provisions under 29 U.S.C. Section 2611(2)(a).

10.     On or about January 21, 2003, the Plaintiff timely filed a charge of unlawful employment discrimination based upon sex, female and condition, pregnancy with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

11.     On or about October 15, 2003, the CHRO issued a release and right to sue letter.  A copy of the right to sue letter is attached hereto as Exhibit B.


FACTUAL ALLEGATIONS

12.     Beginning in or about August, 1996, the Plaintiff began work as an Account Executive with the Defendant and reported to her supervisor at that time, Robert Fontaine. The Plaintiff was highly successful in performing her responsibilities and duties of sales and territory management for the New England territory, including Connecticut,

3

Massachusetts, Rhode Island, Vermont, Maine, New Hampshire and New York State. The Plaintiff routinely had contacts with Connecticut and sold lines of the Defendant's clothing to country clubs and businesses in Connecticut. The Plaintiff also maintained a home office in Connecticut out of which she did business for the Defendant.

13.    Plaintiff continued to be employed for six years and regularly exceeded performance expectations until such time as her employment was involuntarily terminated on November 12, 2002.

14.    On or about February 11, 2002, the Plaintiff contacted her previous supervisor, Andrew Bell, the National Sales Manager of Polo to inform him she was pregnant and of her anticipated due date of August 12, 2002. The Plaintiff specifically informed Mr. Bell that she intended to, and in fact did, work up to her due date and maintain all of her functions and job responsibilities. At that meeting, the Plaintiff also requested copies of her benefits plan and Family and Medical Leave Act rights. The Plaintiff continued to work during this period of time without incident.

15.    Thereafter, on or about April 1, 2002, the Respondent hired a new National Sales Manager, Scott Mahoney, who became Plaintiff's immediate supervisor. Although he was not officially announced as the National Sales Manager until June 11, 2002, the

Plaintiff reported to him beginning in April, 2002.  On April 15, 2002, Mr. Bell e-mailed

Mr. Mahoney of the Plaintiff's pregnancy and anticipated due date.  At that time, Mr. Bell

also provided Plaintiff a copy of the Benefit Plans offered and the Human Resources

personnel to contact concerning her entitlement to FMLA benefits.  On April 15, 2002, the

Plaintiff contacted the Human Resources representative, Shanta Watson, to review with her

the procedures when she went out on FMLA.

16.    On or about April 25, 2002, the Plaintiff had a conference with Mr.

Mahoney for the purposes of "getting to know where we are as a division" and "to review

with me my plan for getting the job done."  During that conference, the Plaintiff requested

from Mr. Mahoney that he keep her informed during her leave of his plan for any changes

so that she could alert accounts of any issues prior to her taking leave.  This request,

however, was ignored.

17.    On or about May 28, 2002, Mr. Mahoney requested the Plaintiff to travel

two days overnight.  When the Plaintiff informed Mr. Mahoney that she could not do

overnight travel because of the pregnancy and the close proximity of her due date, but

would be happy to meet with him after her doctor's appointment, Mr. Mahoney became

annoyed with this request and said they would simply have to work through the schedule.

18.     On or about June 19, 2002, Mr. Mahoney demanded the Plaintiff provide him with a start and return to work date concerning her leave of absence. After speaking with Ms. Watson of Human Resources, who advised her to take twelve (12) weeks leave, the Plaintiff advised Mr. Mahoney she would commence her leave on or about July 19, 2002, and return on or about November 1, 2002.

19.     Thereafter on or about June 26, 2002, Mr. Mahoney and the Plaintiff met to travel through her territory and visit her accounts. During that meeting, the Plaintiff informed Mr. Mahoney she would be willing to be available during her leave to support the person covering her territory. Mr. Mahoney cut her short, telling her not to interfere with the employee who would be covering her territory, and pressuring the Plaintiff that when she returned from leave she would be expected to travel four days a week. The Defendant further questioned her commitment to this newly articulated schedule. The Plaintiff was unaware of any similar demand placed on male employees in her position. At no time previous to her pregnancy or her request for FMLA leave was travel of four times per week a requirement, nor was there any issue with her travel schedule or her service of the accounts. The Plaintiff assured Mr. Mahoney that she was ready, willing, and able to do whatever was necessary to get the job done, including travel.

6

20.     On or about July 19, 2002, the Plaintiff contacted Mr. Mahoney to advise him that her leave would not commence until August 1, 2002.  Mr. Mahoney did not return her call and never responded to her concerning the change in the leave date.   The Plaintiff further advised the Human Resources benefits personnel, Shanta Watson, she would be staying on through August 1, 2002.

21.     Thereafter, on or about July 22, 2002, the Plaintiff e-mailed a maternity leave letter to Mr. Mahoney for his approval to be sent to the account base.

22.     On or about July 24, 2002, Mr. Mahoney directed the Plaintiff to mail to New York all of her upcoming selling season samples, and that these would be returned to her upon her return to work.

23.     On or about August 1, 2002, the Plaintiff e-mailed a letter to the Division President, John Kirwin, and Mr. Mahoney, indicating that she would officially be starting leave on August 1, and requesting that a line opening information be sent to her so that she could stay up to speed so that when she returned to work she could begin work seamlessly. The Plaintiff never received a response from either Mr. Mahoney or anyone else at the Defendant, nor did she receive any of the information or tools requested to enable her to keep abreast of her accounts.

7

24.     On August 8, 2002, the Plaintiff gave birth to her daughter.  Between
August 11, 2002 and November 1, 2002, the Plaintiff maintained contact with other
account executives in the division so that upon her return she would be fully up to speed to
assume her responsibilities.  At no point during her leave did Mr. Mahoney contact her to
review her accounts or any concerns he had with how she had run the division.

25.     During the Plaintiff's leave the Defendant assigned her territory to Michael
McFarlane, a younger, less experienced sales representative who covered territory in New
Jersey.

26.     On or about October 4, 2002, the Plaintiff contacted Mr. Mahoney to check
in, and advise him that she would, as planned, be returning on November 4, 2002.  At that
time, he informed the Plaintiff that she needed to be prepared with child care full time, and
that she would be expected to be on the road four days a week traveling.  The Plaintiff
again confirmed that this was not a problem, that she would arrange to speak with him
again on October 21, 2002.   The Plaintiff further requested information on what was
happening in her division so that when she returned to work she could begin work in an
organized fashion.

27.     On October 21, 2002, the Plaintiff contacted Mr. Mahoney who

8

immediately questioned her as to whether she had in fact secured full time day care. The

Plaintiff again reassured him that she understood the importance of traveling her territory,

and that she had made necessary day care arrangements at that time. The Plaintiff

requested a meeting on November 7, 2002, in the New York Showroom so that she could

review the line, obtain all of the new information, and get brought up to speed on any

changes with respect to budgets for the Defendant, which Mr. Mahoney agreed to.

29.      However, when the Plaintiff returned on her anticipated return date on

November 4, 2002, she had no information or access to computer inventory or her account

activity list, and  it appeared that no one in the Defendant or any of her accounts knew of

her return to work date.    The Plaintiff e-mailed Mr. Mahoney to request access to these

items, and that Mr. McFarlane transfer any information about her accounts to her. Mr.

Mahoney did not return her call until late in the day, stating that he needed some time to

get things organized. He did nothing to welcome the Plaintiff back, but instead

immediately began to criticize her performance, stating that an account that was opened in

March was problematic. The Plaintiff advised him that that account was an account

approved by previous management. He indicated that he did not believe that that was the

case, and asked if Plaintiff had any proof.

9

30.    Between November 5 and November 6, 2002, the Plaintiff contacted the
majority of her accounts announcing her return.   The account supervisors were shocked to
hear that she had returned, and that they believed she would not be returning to her
position.

31.    Thereafter, on or about November 6, 2002, Mr. Mahoney contacted the
Plaintiff to change the meeting time in New York, and instead of reviewing the line stated
that he would instead review her performance with a performance appraisal.   The Plaintiff
was surprised and confused as Mr. Mahoney had been her immediate supervisor only for
approximately a month and one-half.   Plaintiff questioned him on how she was to prepare
for the performance review when she was not provided the reports to bring her up to speed
on the sales numbers or bookings.  He simply told her "they would work through it."

32.    Thereafter, on November 7, 2002, Plaintiff was presented with a
performance review which in no way reflected her previous performance reviews or what
she had accomplished for the Defendant.   In that performance review Mr. Mahoney stated
that Plaintiff would be terminated if these areas did not change.  She requested an
opportunity to prepare a written response and then reminded him of the plan to visit the
showroom floor. Although the Plaintiff was supposed to meet and review the line at the

showroom, Mr. Mahoney claimed the line was being shown to an account and that it was not available for her to review.  At no time did Plaintiff review the Company lines when she was in the New York showroom on November 7, 2002.

33.     On or about November 11, 2002, the Plaintiff contacted the person who covered her territory while she was away on leave, Michael McFarlane.  After that meeting, she contacted Mr. Mahoney by e-mail to review her plan of action to get up and running on the accounts, and to set up appointments.  The Plaintiff, however, got no response.

34.     Thereafter, on November 12, 2002, Mr. Mahoney called the Plaintiff and stated he needed to meet with her that afternoon.  The Plaintiff spent the day reviewing and finalizing business plans and objectives, and  reviewed and prepared in response to her appraisal for the meeting.  However, when she arrived at the Sherwood Diner in Westport, Connecticut, at 4:30 p.m. on November 12, 2002, Mr. Mahoney informed the Plaintiff she was being terminated as a result  of a "position elimination."  The Plaintiff was the only employee laid off or whose position had been eliminated in the "reorganization".  She subsequently learned that Michael McFarlane, the person who covered for her in her absence, would be assuming her position.   The Plaintiff was shocked and upset and could

11

not understand why her position was eliminated as she had been promised a position upon her return from her pregnancy and FMLA.   The entire termination "meeting" lasted nine minutes.

35.     The Defendant in eliminating her position and assigning Plaintiff's responsibilities to a male employee failed to reinstate Plaintiff to her position and/or offer her an equivalent position in violation of the FMLA 29 U.S. 2614(a).

36.     As a direct and proximate result, the Plaintiff has sustained damages including back pay, front pay, liquidated damages, costs, consequential damages, as well as personal pain, anxiety and emotional distress.


COUNT TWO

1.     The Plaintiff repeats, realleges and incorporates by reference herein Paragraphs 1-36 of Count One as Paragraphs 1-36 of Count Two.

37.     The Plaintiff brings this action pursuant to 29 U.S.C. Section 2615, *et seq*.

38.     The Defendant discharged the Plaintiff from her employment in retaliation for taking FMLA leave in violation of 29 U.S.C. Section 2615(a)(2) in that it unlawfully interfered with the Plaintiff's right to reemployment.   The Defendant was motivated by the

interest to discriminate.

      39.     As a direct and proximate result , the Plaintiff has sustained damages including back pay, front pay, equitable relief, costs, consequential damages, as well as personal pain, anxiety and emotional distress.

<u>COUNT THREE</u>

      1.     The Plaintiff repeats, realleges and incorporates by reference herein Paragraphs 1-36 of Count One as Paragraphs 1-36 of Count Three.

      37.     By the conduct more fully described above, the Defendant, its agents, servants and/or employees discriminated against Plaintiff in the terms and conditions of Plaintiff's employment, on the basis of Plaintiff's sex, female and condition, pregnancy and on the Defendant's failure to return Plaintiff to her position upon her return from maternity leave in violation of 42 U.S.C. § 2000, *et seq.*

      38.     As a direct and proximate result of the Defendant's discriminatory practices, policies and procedures, the Plaintiff suffered and continues to suffer irreparable economic loss in the form of wages, salary, bonus, benefits, liquidated damages, costs, consequential damages, as well as that Plaintiff would have received absent Defendant's discrimination.

      39.     As a further direct and proximate result of the aforementioned conduct, the

13

Plaintiff has suffered and continues to suffer mental pain and anguish are to Defendant's discrimination.

COUNT FOUR

1.    The Plaintiff repeats, realleges and incorporates by reference herein Paragraphs 1-36 of Count One as Paragraphs 1-36 of Count Four.

37.    By the conduct more fully described above, the Defendant, its agents, servants and/or employees discriminated against Plaintiff in the terms and conditions of Plaintiff's employment, on the basis of Plaintiff's sex, female and condition, pregnancy, and on the Defendant's failure to return the Plaintiff to her position upon her return from maternity leave in violation of Connecticut General Statutes § 46a-60(a)(1), § 46a-60(a)(7) and § 31-55pp, Connecticut's Family Medical Leave Act.

38.    As a direct and proximate result of the Defendant's discriminatory practices, policies and procedures, the Plaintiff suffered and continues to suffer irreparable economic loss in the form of wages, salary, bonus, benefits, liquidated damages, costs, consequential damages, as well as that Plaintiff would have received absent Defendant's discrimination.

39.    As a further direct and proximate result of the aforementioned conduct, the Plaintiff has suffered and continues to suffer mental pain and anguish are to Defendant's

14

discrimination.

THEREFORE, Plaintiff prays that this Court grant it the following relief:

1.    Compensatory damages, including back pay and front pay;

2.    Liquidated damages;

3.    Attorney's fees and costs;

4.    Such other and further relief as the Court deems just, proper and equitable.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues.

Respectfully submitted,

THE PLAINTIFF
ALEXIS CORRIGAN

By _____
Lisa A. Zaccardelli, Esq. (ct07983)
LEVY & DRONEY, P.C.
74 Batterson Park Road
P.O. Box 887
Farmington, CT   06034-0887
(860) 676-3000
Its Attorneys

15

COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

## RELEASE OF JURISDICTION

FORM 500(3)

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES, ex rel.

Alexis Corrigan
Complainant

Date: October 15, 2003

vs.

Polo Ralph Laren
Respondent

CCHRO CASE NO.: 0310320
EEOC CASE NO.:   16aa300700

## RELEASE OF JURISDICTION

Pursuant to Complainant's and/or Complainant's attorney(s) request dated
**October 7, 2003**, the Commission on Human Rights and Opportunities hereby releases
its jurisdiction over the above numbered and captioned complaint in accordance with
Section 46a-101 of the Connecticut General Statutes.  Also, in accordance with Section
46a-100, C.G.S. Complainant is hereby authorized to commence a civil action against the
Respondent in the Superior Court for the judicial district in which the discriminatory
practice is alleged to have occurred or in which the Respondent transacts business.  If
this action involves a state agency or official, it may be brought in the Superior Court
for the Hartford-New Britain judicial district.

**Please be advised that, pursuant to CONN. GEN. STAT. §46a-103, the Complainant or
Complainant's attorney must serve on the Commission, at the same time all other
parties are served, a copy of any civil action filed pursuant to this release.  The
Commission must be so served because it has a right to intervene in any action filed
based on a release of jurisdiction.**

In granting this release, the Commission expressly finds, in accordance with Sections
46a-100 and 46a-101(b) of the C.G.S., that all conditions precedent to the issuance of the
release of jurisdiction have been complied with inasmuch as the complaint was timely
filed in accordance with 46a-82 of the C.G.S and the complaint has been pending for a
period of not less than 210 days, inasmuch as it was filed on **January 23, 2003**
and is still pending on **October 15, 2003**, a period in excess of two hundred and ten
(210) days.

Rev. 2/6/02

- 2 -

Moreover, there is no reason to believe that the complaint will be resolved within a period of thirty (30) days from **October 8, 2003**, the date the Commission received Complainant's request for the Release of Jurisdiction, nor is the complaint currently scheduled for public hearing. [see Section 46a-101(c) of the Connecticut General Statutes].

The complainant must bring an action in Superior Court within ninety (90) days of receipt of this release and within two (2) years of the date of filing the complaint with the Commission. The Superior Court shall have such authority as is conferred upon it by Section 46a-104 of the C.G.S., and other laws of the State of Connecticut.

Concurrently, with the issuance of this Release of Jurisdiction, the Commission hereby administratively dismisses this complaint in accordance with Section 46a-101(d) of the Connecticut General Statutes. Furthermore, said dismissal is not subject to administrative judicial review.

                Raymond P. Pech
                Interim Executive Director

By: _____
                Donald E. Newton
                Chief of Field Operations

Dated and entered of record in the Commission's Administrative Office in Hartford, Connecticut on this 15th day of October, 2003.

cc: Complainant: Alexis Corrigan
     Complainant's Attorney: Attorney Lisa A. Zaccardelli
     Certified Mail Receipt 7002 3150 0000 3861 8637
     Respondent(s): Polo Ralph Lauren
     Respondent's Attorney: Attorney Christina L. Feege
     Regional Manager: Epifanio Carrasquillo, Regional Manager
                Capitol Regional Office

Rev. 2/6/02

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that a copy of the foregoing was mailed, postage prepaid, to the following on the 12th day of November, 2003:

> Christine Feege, Esq.
> Scott J. Wenner
> LITTLER MENDELSON, P.C.
> 885 Third Avenue, 16th FL
> New York, NY 10022

Lisa A. Zaccardelli

16