FILED

2005 FEB -8 P 4: 22

US DISTRICT...

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXIS CORRIGAN,<br>        Plaintiff, | : CIVIL NO:<br>: 3:03 CV 0230 (SRU)<br>: |
| VS. | : |
| POLO RALPH LAUREN,<br>        Defendant. | :<br>: FEBRUARY 8, 2005<br>: |

## PLAINTIFF'S LOCAL RULE 56(a)2

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56(a)2, the Plaintiff, Alexis Corrigan by and through undersigned counsel hereby submits its Counterstatement of Facts.

1.  Denied. The Plaintiff was an Account Executive in the Defendant's Golf Division from August, 1996 through her termination of November 12, 2002 (Corrigan Tr., p. 187)(Amended Complaint, ¶13).

2.  Admitted, except that Plaintiff's scheduled return to work date was November 4, 2002 (Amended Complaint, ¶29)(See also e-mail, Exhibit B)

3.  Denied. The Plaintiff was supervised by Andrew Bell from approximately January 1, 2000 through April 25, 2002 when the Defendant transitioned Scott Mahoney to the National Sales Manager position through the

date of her termination on November 12, 2002. (Corrigan Tr., pp. 20-21)(Amended Complaint, ¶13)[1].

    4.    Admit.

    5.    Admit that the Polo job description states that there should be six in-store visits per year, but deny the Defendant ever discussed or reviewed this job description as a problem with Plaintiff's performance until the Defendants manager, Scott Mahoney, required Plaintiff upon return from maternity leave to four days of travel per week. (Corrigan Tr., pp. 42-43)(Affidavit of Karmyn Heilmann, Exhibit N)

    6.    Denied. There was no requirement of four days of travel until the Defendant Scott Mahoney placed this requirement on the Plaintiff in a conversation that the Plaintiff had with the Defendant on a trip although the Plaintiff consistently traveled four to five days a week. (Corrigan Tr., p. 63)(See also, Bell Tr., pp. 141-142)(Amended Complaint, ¶¶17-19)

    7.    Denied. The Plaintiff consistently traveled at least four days a week, and there was no issue with her travel schedule. In addition other Account

---

[1] (Amended Complaint, ¶16)(The Defendant's citation to p. 11 of Corrigan transcript does not support their statement)

Executives had not been told to travel four days a week. (Corrigan Tr., p. 63)(Affidavit of Karmyn Heilmann, Exhibit N)

8. Deny. During the Plaintiff's tenure, initially she sold annually between 100 and 110 accounts assigned to a Northeast territory which was realigned to approximately 93 accounts which covered the entire New England area, New York state, and part of southern Connecticut. (See Amended Complaint, ¶4)(Corrigan Tr. pp. 17-19)

9. Admit there were seventeen Account Executives in Fiscal 2002. Deny that the chart attached to Exhibit E is not a specialty division organizational chart for the period of time in which the Plaintiff was employed. There is no such organizational chart attached to the annexed Exhibits as D0061. (See Organizational Chart, Exhibit K)

10. Admit that the Plaintiff worked in the territory referred to as the Northeast territory. Denied that the other Account Executives worked in territory referred to as the Northeast or New England territory. The Defendant's other Account Executives Michael MacFarlane worked in the area of New York and New Jersey, and Denny DeMarino worked in the area considered in the metro area. (Corrigan Tr., p. 8)(See Affidavit of Alexis Corrigan, Exhibit Q)(Amended

Complaint, ¶ 4)(Herfel Tr., p. 115)(MacFarlane Tr., p. 50)

11.  Admit.

12.  Denied.  (See Mahoney Tr., pp 42-45)(See Overall Golf Division Fiscal 2002, Volume Summary Exhibits F, AA)(See Opening Letter to Shareholders, Exhibit BB)

13.  Denied.  The only documentation of a territory consolidation prior to Plaintiff's termination was in the Southwest in 2001.  (See e-mail, Exhibit FF)

14.  Admit that Karen Emde was terminated in connection with a lay off in the Florida territory.

15.  Admit that she was terminated and her accounts redistributed.

16.  Admit.

17.  Denied.  There is no evidence that the Division reduced expenses by consolidating territories in the Southwest, Midwest and Northeast, reducing the number of Account Executives on the Division's payroll as can be seen in Exhibit K.  Moreover, the documentary evidence reveals the only other territory consolidation prior to Plaintiff's termination in 2001 was in the Southwest.  (Exhibit FF)(See also Fiscal 2002 Volume Summary, Exhibit AA)(See also Organizational Chart, Exhibit K)

18. Denied. (See Organizational Chart, Exhibit K)(See also e-mail, Exhibit FF)

19. Admit. In 2001, the Golf Division did consolidate two territories in the Southwest, but according to said documentation this is the only territory to be consolidated. (See Exhibit FF)

20. Admit that the Defendant in connection with the consolidation for the Southwest disclosed a document entitled "Peer Review" plan to compare two Account Executives. Deny, however, that the Company utilized a Peer Review ranking system in Florida. (See e-mail of Andrew Bell, Exhibit FF)

21. Admit that Mr. Smith was no longer an Account Executive.

22. Denied. (See Exhibit DD)

23. Denied. There is no evidence of any plan of consolidation for this region or for any particular Account Executives, or that Todd Fontaine was the worst performer in the region. (See Organizational Chart, Exhibit K)(See e-mail of Andrew Bell, Exhibit FF)

24. Denied that it was a consolidation but admit accounts were redistributed (See e-mail of Andrew Bell, Exhibit FF)

25. Denied. The document dated December 2, 2002 is after Plaintiff's

termination and is a mid-year Fiscal Review and not a "Goal Setting Worksheet" for the Company Fiscal Year. It is only executed by Mr. Mahoney. (See Exhibit CC) (See Mahoney Tr., p. 247-249)(See Peer Review completed on October 31, 2002 attached to Defendant's Exhibits)

26. Denied. The course of action first appears in a Mahoney mid-year Review dated December 2, 2002, subsequent to the Plaintiff's termination. (See Exhibit CC)(See also Herfel Tr., p. 90)(See Mahoney Tr., p. 215)  Second, Mahoney testified that it was in the Fall, 2002 that he was instructed to and made the decision to eliminate an Account Executive position. (Mahoney Tr., pp. 131-132; 207, 208)

27. Denied. (See Mahoney Tr., pp. 207-208)(See Peer Review Ranking dated October 31, 2002, attached to Defendant's Exhibits)

28. Denied. (Herfel Tr. pp. 118-119) Ms. Heilmann was an Account Executive in Colorado and another Account Executive who was not a part of the territory, Joe Artman, took over accounts in Nevada and was not part of the Peer Review. (See e-mail of Andy Bell, Exhibit FF)

29. Denied, as Mahoney used the Revised Performance Evaluations he prepared for Ms. Corrigan and Mr. MacFarlane. (See also Revised Fiscal 2002

- 6 -

Performance Evaluations, Exhibits V and W) (See Mahoney Tr., p. 247)

30.     Denied that it was Snow who assigned the scores, or that this information was considered. (See Mahoney Tr., pp. 222-224)

31.     Denied that it was Snow who prepared the Peer Ranking  (See Mahoney Tr., pp. 222-224)

32.     Denied that it was Snow who prepared the Ranking, but admit that MacFarlane's score is a "15," but based on a revised performance review prepared by Mahoney. (See Mahoney Tr., pp. 222-224)

33.     Denied as (1) it was MacFarlane's only performance review and (2) his total sales were less than the Plaintiffs for Fiscal 2002. (See Performance Review of MacFarlane prepared by Andrew Bell, Exhibit V compared with Performance Review of Ms. Corrigan prepared by Bell, Exhibit I)   MacFarlane missed his overall budget by 24.6% for Fiscal 2002. His actual sales was $1,539,145. Ms. Corrigan's sales for Fiscal 2002 were $1,713,424. (See Performance Reviews for Ms. Corrigan and MacFarlane prepared by Bell, Exhibits I and V)

34.     Admit that Plaintiff received a score of an 11, but deny that the Plaintiff's performance was marginal or that Snow prepared the Peer Ranking.

(See Performance Review of Bell, Exhibit I)(See also Exhibits F and G) (See Mahoney Tr., pp. 222-234)  Deny as Plaintiff did not receive an overall score of a "development needed" on her 2002 Performance Review, or that she failed to meet sales targets on a yearly basis or that she failed to grow her territory.  Ms. Corrigan grew her territory from Fiscal 2001 to Fiscal 2002 by 21% for mens and 28.9% for womens.[2]  Ms. Corrigan overall sales exceed the overall sales of MacFarlane for Fiscal 2002.  (See Performance Reviews of Plaintiff in Fiscal 2001 and Fiscal 2002, Exhibit I and V)(See Performance Review of MacFarlane, Exhibit V)  As far as the "customer complaints," these were directed to the performance of the entire division and not to sales. (Corrigan Tr. pp. 164, 172-173, 176)  (Affidavit of Alexis Corrigan, Exhibit Q)

35.   Denied.  The Plaintiff received a "meets expectations" Fiscal 2002 annual performance evaluation prepared by her supervisor for Fiscal 2002.  Andrew Bell was the Plaintiff's supervisor for Fiscal, 2002, and Ms. Herfel did not direct Mahoney to change the performance evaluation of Plaintiff.  (Fiscal 2002 Performance Review by Andrew Bell, Exhibit I)(Herfel Tr., pp. 41-46; 106)

---

[2] The Plaintiff has calculated these percentages based upon the budgeted numbers contained in Fiscal 2002 Performance Reviews for Ms. Corrigan.

36. Admit. Mr. Bell, Plaintiff's supervisor for the Fiscal 2002 year, gave Plaintiff a "meets expectations" review. Admit that Mr. Mahoney changed Plaintiff's score to a "development needed." Admit that Mr. Mahoney changed Mr. Bell's reviews of Karmyn Heilmann and Eric Christie, but deny it was based on his personal assessment of their performance. (See Affidavit of Kamryn Heilmann, Exhibit N) (MacFarlane Tr., pp. 53-54) Mahoney also changed the review of Michael MacFarlane to reflect improved performance and utilized this review in preparing the Peer Ranking by lowering sales budget to make his performance look better. (See Revised Performance Review of MacFarlane for Fiscal 2002, Exhibit W) (Mahoney Tr., p. 247) In addition, Ms. Corrigan did meet her commitments for 2002 in womens. Seven Account Executives, including Mr. MacFarlane and John Higgenbothan did not meet their sales targets for either mens and womens in Fiscal 2002. (See Performance Reviews for Account Executives Fiscal 2002, Exhibit X)

37. Denied. Only one Account Executive met their sales targets (mens and womens) for Fiscal 2002. (See Performance Reviews attached as Exhibit X)

38. Admit that these were Plaintiff's return rates for those years but for Fiscal 2003 the return was at 5.3%. (See Affidavit of Alexis Corrigan, Exhibit Q)

39. Denied. (See Performance Review of MacFarlane for Fiscal 2002, Exhibit V by reviewing budget versus overall sales)

40. Admit that MacFarlane did not receive an overall rating of "development needed" on his Performance Review but at the time of Plaintiff's review, Mr. MacFarlane had been evaluated for his Fiscal 2002 performance (See Fiscal 2002 Performance Review, Exhibit V)

41. Denied. (See Performance Review of Denny DeMarino Fiscal 2002, Exhibit X)

42. Admit that as to the review disclosed there was no development needed.

43. Deny that the Plaintiff ranked the lowest among her peers in the Peer Group ranking as Mr. Mahoney used the revised reviews of Ms. Corrigan and Mr. MacFarlane in preparation of the document, (Mahoney Tr., p. 247) or that Ms. Snow was involved in the decision to terminate the Plaintiff. (Mahoney Tr., pp. 207-208)(See Also Peer Review Ranking dated October 31, 2002 attached to Defendant's Exhibits)

44. Denied. These are random customer surveys which are not considered complaints of the Plaintiff but were directed at the Company overall,

and/or were requested by Mahoney during Ms. Corrigan's maternity leave. (Corrigan Tr. pp. 164, 172-173, 176) (Corrigan Affidavit, Exhibit Q)(MacFarlane Tr., p. 80)

45. Denied. Mr. MacFarlane was not employed at the time the customer surveys were performed as these were generated at the time of the merger of the divisions. (Corrigan Tr. pp. 163-166)(See Affidavit of Alexis Corrigan, Exhibit Q)  These complaints were not part of the Plaintiff's personnel file but were maintained in a file by Scott Mahoney (Mahoney Tr., p. 256)

46. Denied. The Peer Group Ranking and Selection concerning the consolidation in the Northeast was not completed in late October, 2002. The document is dated October 31, 2002 and was prepared in anticipation of Plaintiff's return. (Mahoney Tr., pp. 207-208)

47. Admit that the Plaintiff was slated to return to work from her FMLA leave on November 4, 2002, and that the Fiscal 2002 Performance Review provided for Plaintiff to be put on a 90 day performance improvement plan. (Corrigan Tr., p. 116) (Herfel Tr., pp. 110-112)

48. Admit that the Performance Review was delivered but deny the Plaintiff was given an opportunity to perform as she was not restored to her

position. (Corrigan Tr., pp. 116-118) (See Performance Review, Exhibit U)(See also Bookings Recap, Exhibit S)

49. Denied. Ms. Corrigan was not returned to her position on November 4, 2002. (See Exhibit S)(Corrigan Tr., pp. 117-118)  Admit that Ms. Herfel had not approved the job elimination of Ms. Corrigan by November 4, 2002.

50. Admit that Mahoney delivered Plaintiff's Performance Review on November 7, 2002, that stated she was on a 90 day Performance Improvement Plan. However, the Plaintiff was not provided with access to her accounts and none of her accounts had been transferred back to her as of the date of her termination on November 12, 2002 (Corrigan Tr. pp. 117-118)(See Exhibit S)(Mahoney Tr., p. 199)

51. Denied. Plaintiff was not returned to her position. (See Corrigan pp. 117-118)  Admit that Ms. Herfel agreed to terminate Plaintiff on November 12, 2002.

52. Denied. Plaintiff was terminated on November 12, 2002. (Corrigan Tr., p. 188)(See Exhibit T)

53. Admit that Mr. MacFarlane continued to service the Plaintiff's accounts, but that some were reassigned to DeMarino, as well as John

Higgenbothan, another Account Executive who was not included in the Peer Review Ranking. (MacFarlane Tr., pp. 104-105)

54. Admit that there are currently sixteen Account Executives, but deny there are three Account Executives in the Northeast territory as there are no Account Executives assigned to the Northeast territory. (See Corrigan Affidavit, Exhibit Q)

55. Denied. (See MacFarlane Tr., pp. 104-105)

56. Denied. (See Performance Reviews for Fiscal 2002, Exhibit X)

57. Denied. In addition there are no pages 101-102 attached as Exhibits and page 101-102 do not state what is claimed. In addition, no other Account Executives were told in 2002 prior to the Plaintiff's termination that there was a requirement to travel four days a week. (See Affidavit of Karmyn Heilmann, Exhibit N)

58. Admit.

59. Admit.

60. Denied. MacFarlane had the only access to Ms. Corrigan's territory. (Corrigan Tr., pp. 99-100)

61. Admit, but deny that this was the only reason. The Plaintiff could

not perform her position without access to VR Link. (Corrigan Tr., pp. 93-96)

62. Admit that it contains this information but does not permit inputting orders. (See Bell Tr., p. 77)

63. Denied. (See Affidavit of Alexis Corrigan, Exhibit Q)

## DISPUTED ISSUES OF MATERIAL FACT

1.  Whether the Plaintiff was restored to her position as an Account Executive pursuant to Section 29 U.S.C. Section 2614 of the Family and Medical Leave Act and Section 31-55, *et seq.* of the Connecticut General Statutes.

2.  Whether the Defendant has established the job elimination would have occurred even if Plaintiff was not on maternity leave.

3.  Whether the statements made to the Plaintiff by the Defendant's supervisor, Scott Mahoney, complied with the lack of any financial support for the elimination of the position and the revisions to the performance reviews of Plaintiff and MacFarlane raises an inference of discrimination.

2.  Whether the Defendant has alleged a legitimate nondiscriminatory reason for Plaintiff's termination in the form of a job consolidation.

3.  Whether the Defendant's reasons are pretextual, that is whether the position elimination is a pretext for the Plaintiff taking FMLA maternity leave and in violation of Title VII of the Civil Rights Act on the basis of Plaintiff's sex and/or pregnancy and is unworthy of credence.

4.  Whether there was a territory referred to as the Northeast which included those areas serviced by other Account Executives, Michael MacFarlane

and/or Denny DeMarino.

5. Whether in 2002, Account Executives' performance was measured against all other persons in the position.

6. Whether there is any evidence of any financial reasons namely business expenses for eliminating Plaintiff's position and reassigning her accounts to three male employees.

7. Whether the Defendant has established by a preponderance of the evidence it was unreasonable to restore Plaintiff to her position pursuant to 46a-60(a)(7).

8. Whether the Defendant has established by a preponderance of the evidence that the Plaintiff would not be entitled to reinstatement because her job would have been eliminated during the same period even if the Plaintiff had not taken leave pursuant to the FMLA.

9. Whether the Defendant, and in particular the Defendant interfered with Plaintiff's position and/or retaliated against the Plaintiff for taking such maternity leave and/or violated her rights under 46a-60(a)(1) and/or 46a-60(a)(7) based upon her pregnancy and sex.

Respectfully submitted,

THE PLAINTIFF
ALEXIS CORRIGAN

By: /s/ Lisa C. Zaccardelli
Lisa A. Zaccardelli, Esq. for
LEVY & DRONEY, P.C.
74 Batterson Park Road
P.O. Box 887
Farmington, CT  06034-0887
(860) 676-3000
Fed. Bar #ct07983

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been mailed, postage prepaid on this 8th day of February, 2005, to the following counsel of record:

Christina Feege, Esq.
Scott J. Wenner, Esq.
LITTLER MENDELSON, P.C.
885 3rd Avenue, 16th Floor
New York, NY 10022

_____
Lisa A. Zaccardelli