UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXIS CORRIGAN,<br>      Plaintiff, | : CIVIL ACTION NO:<br>: 3:03 CV 0230 (SRU)<br>: |
| VS. | : |
| POLO RALPH LAUREN,<br>      Defendant. | :<br>:<br>: MARCH 17, 2005 |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY
MEMORANDUM OF LAW AND REPLY AFFIRMATION**

I.  INTRODUCTION.

The Plaintiff, Alexis Corrigan ("Plaintiff" or "Ms. Corrigan"), hereby files this Surreply to Defendant Polo Ralph Lauren's ("Defendant") Reply Memorandum of Law and Reply Affirmation.[1]

II. THERE ARE MATERIAL FACTS IN DISPUTE AS TO WHETHER THE PLAINTIFF WAS REINSTATED TO HER POSITION AS AN ACCOUNT EXECUTIVE ON NOVEMBER 4, 2002.

The Defendant goes out of its way to argue that it had restored the Plaintiff

---

[1] In conjunction with this Surreply the Plaintiff files her Request for Permission to file such a Surreply. The Plaintiff received the Reply on March 3, 2005. Ms. Feege suggests that certain parts of the Plaintiff's Rule 56(a)(2) Statement should be stricken citing to Dusanenkus v. Maloney, 726 F. 2d 82 (2d Cir. 1984). However, in that case the plaintiff failed to file any counterstatement of facts. Here, the Plaintiff has denied those statements and has provided her evidence in support of these statements.

to her position as an Account Executive on November 4, 2002. This contention, however, materially deviates from the record evidence which (1) shows the Plaintiff was not listed as an Account Executive upon her return to the Defendant, and (2) she had no access to her accounts or could not see her customers as the territory had not "shifted back to the Plaintiff." Indeed, Ms. Corrigan's Affidavit further explains what the purpose of the VR Link was for, and without VR Link she could not perform her position with the Defendant. As Ms. Corrigan testified repeatedly in her deposition she did not have the tools to perform her position, and that VR Link was the only system by which she could input orders and check on the status of orders. The AS 400 system did not provide her with any ability to input orders into the system. In addition, there is no evidence that the AS 400 system was available to her and there is no reason to believe that if the VR Link system had not been transferred back over to her from Mr. MacFarlane that the AS 400 system was equally available. And, as Mr. Bell testified, VR Link is the primary system used by the Account Executives to review the status of orders.

Furthermore, contrary to the Defendant's statements, Mr. MacFarlane had not been instructed to turn over his accounts upon the Plaintiff's return, but continued to maintain appointments with a number of Plaintiff's accounts. Moreover, in an e-mail response to Ms. Corrigan on November 4, 2002, Mr.

Mahoney was clearly aware that the territory had not shifted back to Ms. Corrigan, (See Exhibit Y, e-mail from Scott Mahoney to Alexis Corrigan) and that accounts would not be switched back to her until November 11, 2002.  This clearly is evidence of Mr. Mahoney denying Plaintiff access to these and other accounts when he was fully aware that she had no access to VR Link and that the accounts had not been switched back to her and would not be switched back to her until some time after November 11.  Conveniently, this is when Mr. Mahoney delivered to Ms. Corrigan the decision that her she was being terminated.   Exhibit Y shows that Ms. Corrigan was concerned about the status of these appointments and the fact that the territory had not shifted back to her upon her return.

There is no evidence the Plaintiff "started seeing clients upon her return." (Reply Memorandum, p. 2).   In addition to not having access to VR Link, she did not have a sample line to show to customers which she thought she would be able to view but was not permitted when Mahoney instead issued her a performance review.[2]  (Corrigan Tr., pp. 100-116 attached as Exhibit A)     She was not, however, and did not have access to her accounts and had not made any appointments to see her customers as can be seen by Exhibit 6.  These are not

---

[2]  Her appointment to review the line had been cancelled and Mahoney never attempted to reschedule that appointment.   She also never received her samples from MacFarlane which she had been told to turn over to him before her maternity leave.

communications with customers or clients, but with another sales associate concerning her ability to get back to work.

Contrary to Defendant's statements, there is no evidence that Mr. Mahoney or Ms. Snow was aware of any plans to consolidate the Northeast territories since 2000.  (Defendant's Memorandum, p. 4)   Indeed, Mr. Mahoney testified that upon taking the position as National Sales Manager at the end of April, 2002, he was <u>unaware</u> of any plan to consolidate the Northeast territory, and not been instructed to do so.  Mr. Mahoney furthermore, offered differing dates as to when he was allegedly advised of the need to consolidate the territory.   His testimony is inconsistent and not credible.  The only dates which appear are on a document which was executed after the alleged consolidation of the territory in December, 2002, and only executed by Mahoney.[3]   There are no documents which support the need for a consolidation of the territory in the Northeast, including the preparation of a Phase I and Phase II document dated April 1, 2002 by John Kerwin.  In fact, the documents prepared by Kerwin show Ms. Corrigan in the territory and that the territory existed as is dated effective July 1, 2003.   These documents evidence a strategic plan to retain the number of Account Executives.

---

[3]   This calls into question Kerwin's Affidavit which states that he does not have a copy of the initial goal setting worksheet.   Nevertheless, the mid year goal setting worksheet is not executed by him in December, 2002.

4

Ms. Snow furthermore was not part of the Human Resource team in 2000, and has pointed to no documents which would indicate the need to consolidate the Northeast territory.

In an effort to circumvent the actual financial picture of the Defendant, the Defendant suggests the level of sales had "gone backwards." Yet, the objective empirical evidence shows that in 2002 (Exhibit AA), <u>gross dollars</u> increased by over 21.3% in Fiscal Year 2002 from the previous year.  This far from evidence of the division going backwards.[4]  In addition, Exhibit A shows a gross profit for the division of $18,474,535 with a 52.3% gross profit percentage.  One does not need an accounting degree to know that gross profit typically includes costs of goods and expenses.    Moreover, Mr. Mahoney was unaware of any financial reasons to eliminate a position (Mahoney Tr., p. 215 attached as Exhibit B), nor was Ms. Herfel aware of any financial reason to eliminate a position in the Northeast territory when the Plaintiff questioned her on whether she had any documentation to support the financial reasons for the consolidation.  (Herfel Tr., p. 96 attached as Exhibit C)   When pressed on the need to "reduce expenses" Defendant could not come up with one legitimate reason as to why there was any need to reduce

---

[4] The Defendant points to Herfel's testimony as some evidence to support a financial reason to eliminate the position.  But, there was no financial data to support any need to reduce expenses, nor could Ms. Herfel provide any such documentation.

any expenses. (Mahoney, Tr., p. 215, Exhibit B)

The Defendant also argues that the Court should not rely on statements made by the Chairman of the Company, Ralph Lauren, to its shareholders concerning the overall financial picture of the Company in 2002 as "notoriously upbeat." It seems incredulous to believe that in this era of corporate fraud Mr. Lauren would be making misrepresentations concerning the financial picture of the Company or that these communications were designed to mislead investors. The fact is that there is not one piece of objective evidence of a need to eliminate a position in the Northeast territory because of financial reasons in 2002.

In an attempt to support its reasoning, however, the Defendant argues that the Plaintiff would have been selected for layoff regardless of her leave, claiming that Plaintiff conceded that between three Account Executives she was the worst performer when it came to raw sales. This was not her testimony. (See Corrigan Tr., pp. 185, 186, 121, Exhibit A). Moreover, Ms. Corrigan also provided variables that impacted her selling season specific to her territory. In fact, had she been asked to review a document for Fiscal Year 2002, Ms. Corrigan's total gross sales were greater than those of Mr. MacFarlane.[5] In reviewing sales booked for

---

[5] Ms. Corrigan argued that her overall sales for the entire Fiscal Year 2002 were greater than MacFarlanes. In addition her bookings for Fiscal, 2002, prior her going on maternity leave, were greater than MacFarlanes.

6

2003, and in examining the report for July, 2002 which show orders booked to customers, as of July 29, 2002, the last report prior to her maternity leave.   Ms. Corrigan's bookings were closer to her percentage of budget.    If one adds up account commitments for Men's and Women's vs. budget as of July 29, 2002, Ms. Corrigan was at 81% of her total budget and had higher dollar bookings than MacFarlane, who was at 76% and had higher dollars at 625,964 versus MacFarlane at 607,277.    In addition, during that period of time Mr. Mahoney reviewed her performance, her return rate had been lowered to 5.4% and there is no evidence of any customer complaints which were directed at the Plaintiff prior to the point in time she went on maternity leave.   Clearly, as of August 1, 2002, the Plaintiff had exceeded her peers in terms of bookings percentage to overall budget.

  The Defendant attempts to legitimize the decision by arguing Mr. Mahoney had "higher standards than Mr. Bell, and therefore the need for the change in review."   This too is transparent.  The Fiscal 2003 Annual Performance Appraisals do not even consider returns as a measure of performance and therefore not a criteria by which the Plaintiff should have been measured.   (See Fiscal 2003 Reviews attached as Exhibit D)    In addition,  Mr. Mahoney did not rate the Plaintiff in the same way he rated other non-pregnant females or male Account

7

Executives in similar categories. For example, in Fiscal 2003 reviews prepared by Mahoney[6], he rated the following:

**Section 1/Result 1.**

**Ed Poe:**     **"Ed did not meet his sales goal for year but did however grow his territory from year to year" – Meets Expectations**

    **vs.**

**Alexis:**     **"Improvement over prior year, but still short of plan" – Development Needed. (She actually grew her Men's sales by 20.8% vs. the division average of 12.8%).**

**Jared Heinzlick:**     **"missed his sales goal by 20%" - Meets Expectations.**

    **vs.**

**Alexis:**     **Alexis missed her sales goal by 9.7% - Development Needed**

**John Higginbotham:**     **"Missed territory goals for the year" - Meets Expectations**

    **vs.**

**Alexis:**     **Missed territory goals but was closer to her goal than Higginbotham - Development Needed**

---

[6] This comparison shows how Mahoney rated similarly situated male or non-pregnant employees in Fiscal 2003. Ms. Corrigan was already seven months into the Fiscal 2003 when he changed her review. Yet, he clearly did not use the same criteria in evaluating her performance as he did with other employees in 2002 or as can be seen in the Fiscal 2003 reviews.

8

**Section 1/ Result 4.**

<u>**Tracey Lick**</u>:        **20% under travel budget  - Exceeds Expectation**

   **vs.**

<u>**Alexis**</u>:        **26.3% under her travel budget  - Meets Expectations**


<u>**Jamie Sheppard**</u>: **21% under travel budget  -  Exceeds Expectations**

   **vs.**

<u>**Alexis**</u>:        **26.3% under her travel budget  - Meets Expectations**


<u>**Andy Plate**</u>:        **14% under travel budget  -  Exceeds Expectations**

   **vs.**

<u>**Alexis**</u>:        **26.3% under her travel budget  - Meets Expectations**


<u>**Denny Dimarino**</u>: **9.2% under travel budget  - Exceeds Expectations**

   **vs.**

<u>**Alexis**</u>:        **26.3% under her travel budget  - Meets Expectations**


<u>**Wayne Boyd**</u>:        **"T&E came in over budget"  -  Meets Expectations**

9

vs.

**Alexis:**         **26.3% under her travel budget  - Meets Expectations**

With respect to Mr. Mahoney's changes to Mr. MacFarlane's review, the reassignment occurred during Fiscal Year 2002 and therefore part of his sales were attributable to the larger territory.   Second, the Defendant reassigned part of this "Northeast territory" to Mr. Higginbotham.[7]  This directly contradicts the Defendant's contention that the only individuals who comprise the Northeast territory were MacFarlane, DeMarino, and the Plaintiff, if Mr. MacFarlane's territory once included Northern Virginia, Maryland, Eastern Pennsylvania and Delaware and was considered part of the Northeast territory.     Moreover, when looking at total gross sales for 2002, the Defendant attempts to discount the sales by accounting for returns.   Yet, returns in the Fiscal 2002 review are only given a 10% weight.   There is no evidence that Mr. Mahoney noted higher profitability of each of MacFarlane's green grass accounts on the peer ranking form because of the fact of lower returns.  Furthermore it was, in fact, division practice to consider others outside a geographic area in determining whether or not to transfer

---

[7] Indeed, Mr. Higginbotham has Maryland, Delaware, Northern Virginia, East Pennsylvania and Western New York.  Ms. Corrigan also had accounts in Western New York.  If considering MacFarlane part of the Northeast, Higginbotham should also be considered not only because of the transfer of accounts to him from MacFarlane but also because of accounts from Ms. Corrigan.

accounts to a different Account Executive.  For example, Tracy Lick transferred to Chicago to manage accounts in Missouri, Illinois, Northern Indiana and Southeast Wisconsin, even though he had lived in Kentucky and previously managed accounts in Kentucky, Southern Ohio, Southern Indiana, and Southeast Wisconsin (See Schedule of Account Executives attached as Exhibit E)  and had managed accounts in a different geographic area.   For example, Mr. Bell started in Dallas, went to Greensboro, then New York and then back to Dallas.   Jamie Sheppard was also transferred from Atlanta to South Florida.  This refutes Mr. Kerwin's Affidavit that Account Executives are not transferred to manage accounts in different locations because of where they live.  Furthermore, it is quite clear that the Defendant <u>did</u> deviate from established criteria when it chose to change reviews of two out of the three employees involved in the peer selection process.

With respect to the four day travel schedule, Ms. Corrigan testified that Mahoney repeatedly advised her that she would be expected to travel four days a week upon her return and that she was to secure childcare.   There was no caveat that it was only during the busy season.    In fact, Ms. Corrigan consistently testified that Mr. Mahoney told her that upon her return she would be expected to travel four days a week even though she had always traveled four days a week and that this was not an issue.   This is exactly the kind of statements which

11

evidence discriminatory intent in the decision-making process.

III.   <u>CONCLUSION</u>.

For all the foregoing reasons, as well as those set forth in previous memoranda, the Plaintiff respectfully requests the Defendant's Motion for Summary Judgment be denied.

                PLAINTIFF,
                ALEXIS CORRIGAN

                _____
                Lisa A. Zaccardelli, Esq. (ct07983)
                LEVY & DRONEY, P.C.
                74 Batterson Park Road
                P.O. Box 887
                Farmington, CT  06032
                (860)676-3000

**CERTIFICATION OF SERVICE**

      I hereby certify that a copy of the foregoing was mailed, postage prepaid, this 17th day of March, 2005, to the following counsel of record:

Christina L. Feege, Esq.
Scott J. Wenner, Esq.
LITTLER MENDELSON, P.C.
885 Third Avenue, 16th Floor
New York, NY  10022


                              _____
                                 Lisa A. Zaccardelli